Okay, Mr. Voss. May it please the court. My name is Ed Voss and I represent the City of McKinney in this case. This court should reverse the judgment of the district court and the related orders and render judgment on behalf of the city because, number one, the Fifth Amendment takings clause does not apply to the law enforcement actions in this case, and number two, Baker failed to plead or prove her Section 1983 Monell claim against the city. What law enforcement actions does the Fifth Amendment encompass? So far, there hasn't been a case that has said that it applies to any such law enforcement actions. The cases that have addressed the issue have all come down on the side of the Fifth Amendment not applying to law enforcement actions, and particularly of the kind that are the basis of this case. Well, are you arguing for a categorical exemption for the police power, exercise of the police power? I think that I am because that's what all the cases have done. Every case that has addressed this issue has said that when law enforcement is performing its duties, and here there is no dispute that those duties were properly performed, there is no argument that what the police officers did in this case was anything but following their normal procedures to get Mr. Little out of the house, starting from the back to the front. So your argument to us is urging that we follow other circuit law, and the three circuits, right, are the Tenth, the Federal Circuit, and the Seventh? There's more than one. Oh, there is? There are. If I can get to that. I thought it was Leck, Amerisource, and I want to say Johnson, but maybe we're misremembering. Yeah, Johnson. What's the other circuit? Those are . . . All right. Well, that's all right. I'm sure it's . . . I've got them right here. Okay. We have the Third Circuit, the Seventh Circuit, the Federal Claim, Court of Federal Claims, the Fed Circuit, Ninth Circuit. All of those are listed on pages 18 through 24 of the city's brief. That's in addition to . . . Did any of those, or did you in your brief attempt to give us any history and tradition relating to takings clause exceptions, or are you just saying the power of the logic of those? I'm urging the power and the logic. You haven't given us, and none of those circuits have taken the time to say, well, over the history of application of the takings clause, there's been an exception for any police powers damages. They do in this regard, and that is they cite the Supreme Court cases that have held that the Fifth Amendment takings clause does not apply to takings, to law enforcement actions. Okay. And those Supreme Court cases . . . Well, all four of them are strong, but let's start with Bennis v. Michigan. That's on page 21 and 22 of the city's brief. The YMCA case on pages 17 through 18, and also on page 22, is equally strong. The Cedar Point Nursery case is a more recent Supreme Court case from 2021, and in that case, the Supreme Court recognized and distinguished between eminent domain takings and police actions under the Fifth Amendment. The oldest case is from 1887 in Mugler v. Kansas, and that court noted the difference between eminent domain and police powers and said that the latter should not be burdened with the requirement that the government pay individual owners for pecuniary losses they sustain. And so that's what's being claimed here, is that the government is to pay Baker for the losses, even though what happened were lawful and proper law enforcement actions to try to get the bad guy out of her house. And so there was damage that was caused, but it wasn't excessive, it wasn't prurient, it wasn't . . . Why are a bad guy? What about the flooding case law? The flooding case law is logical because the city is taking the property for a public use, and that is one key distinction I'd like the court to focus on in this case, because here, under the Fifth Amendment, the Takings Clause says that the government must pay for the property it takes for public use. In all the cases, in the Supreme Court cases, in the court of appeals cases, none of them say that the public benefit caused by police actions, none of them say that those health and safety things that the police are there to do and there to provide also amounts to a public use. In this case, the district court and Baker are trying to make those terms synonymous. The courts have to distinguish between government action that destroys property but is for the benefit of the public as opposed to the use of the public? That's my argument, yes. That is your argument. And so I think that's an important distinction to make, because here, if you go a little bit higher in altitude, let's say, and you start using the regular eminent domain rationale to say that any public damage, any damage caused by a governmental entity is public use damage, well then, the sky's the limit. There's going to be no standards. That could be an argument, but here we've got state courts that have already interpreted their constitutions that way, including Minnesota, and the sky hasn't fallen. Well, I understand, but that's a matter for the states to decide. I know, but your argument to us is, oh, there's no limit, it'll be a disaster, doesn't seem to be true if we've got state courts that are already doing just that. But not all of them are. I know, but so therefore that policy argument of it can't be done, it'll be too costly, or it might deter legitimate police activity. You haven't cited how in Minnesota everything's going wrong or bankrupting municipalities. Well, no, but I'm still relying on the states to figure that out, as opposed to this court is being asked to apply it at least to Texas, Louisiana, and Mississippi. And so no other circuit has taken that invitation, and the invitation here is to do what no other court of appeals or Supreme Court has done, and the invitation is to apply the Fifth Amendment Takings Clause to lawful and proper law enforcement actions. My position is to urge the court to decline that invitation because it doesn't need to vary from the rationales of all the other courts of appeals and the Supreme Court that doesn't apply the law enforcement problem or the actions that are caused by the law enforcement in the Fifth Amendment context. Our decision, I'm sure you're familiar with it, John Corp. I am. There we warn that this argument is perilous. The broader and broader you allow armed law enforcement, the more you allow them to destroy, the less private property you end up with. It's sort of an ever-increasing orbit. I would caution that that hasn't borne itself out since 1887 with the Supreme Court's Mugler v. Kansas case. I'm sorry. What's your response to John Corp.? The concern in John Corp. hasn't really borne itself out, and I start with the 1887 Mugler v. Kansas case that already recognized the distinction that the Fifth Amendment Takings Clause does not apply to law enforcement. The John Corp. case is, I think, factually enough distinguishable, so it really doesn't apply. It wasn't a law enforcement matter. It was a case where a property owner was having his apartment buildings torn down because of all the code violations that were occurring there. I think that is a substantial difference because here we have law enforcement performing law enforcement duties that were called immediately into action by Ms. Baker and her daughter on the phone. There's this fellow in my house with a 15-year-old hostage. Please help. And so they responded. The John Corp. case is different because, in that case, the property owner bought the properties. They were already in really sad shape, to not get too detailed about it. But then when the city started tearing them down because they weren't being renovated or weren't being improved and those kind of things, I think that's a distinct, that's a difference that matters here. Is there then a distinction between cases in which the police action is for the immediate benefit of the property owner and cases in which it is not? For example, your case, which you just described, or a case in which there's a police chase and the emergency vehicles cut across the lawn and caused destruction to the property. But it's obviously not for the benefit of that particular property owner. I've not found such a case. All the cases in the Supreme Court and all the cases in the federal courts of appeals and in the district courts around the country have all been responding to allegations of a claim for damages under the Fifth Amendment takings clause for damages to their own property. The Leck case. Well, so, in describing your situation a minute ago, you put some emphasis on the fact that it was for the benefit of the property owner, but you're saying that that element of it is not really necessary. Well, I didn't mean to differentiate it so much. I'm just saying that all the cases that have dealt with this issue have dealt with cases in that same scenario. And I'm trying to avoid leaning over toward the John or other eminent domain type cases because that really isn't relevant, in my view, to what happened here at Ms. Baker's house. And so, for that reason, I think that the Fifth Amendment takings clause really doesn't apply as those other cases have held. The closest that this Court has come to these issues that I have found Actually, I didn't find it. It was in the amicus brief that was filed on behalf of the City by the Municipal Lawyers Association and the Municipal League. It was Le Fay versus the City of New Orleans. It was an opinion by Judge Smith from 2022. The question there was whether the failure to comply with the state court judgment may be construed as a taking. And in that New Orleans case, you may remember that the issue was that New Orleans had an automatic traffic enforcement system that ended up causing a lot of people to pay fines. And it was operated by the Department of Public Works when it should have been operated by the Police Department. But all the people who had paid fines before won a class action case in state court. New Orleans was slow to pay. And so the folks filed a takings claim under the Fifth Amendment saying that the city owes them $35 million. And this Court held that it's not a taking, primarily because they were dealing with money instead of property per se. But this Court cited Venice v. Michigan and also Johnson v. Minnetowoc County regarding the takings principles that are being asserted here in this case. And in my brief, the Venice case is on pages 21 and 22, and the Johnson v. Minnetowoc County case is on page 18 of the City's brief. That's as close as I can find that Fifth Circuit has addressed these kinds of takings issues. But there is no Fifth Circuit precedent. This is a case of first impression to this Court. Would you talk quickly about the Steele decision, 1980? Sure. I would be happy to. I'm not fond of the Steele decision. And I think that it's internally and logically flawed. And one of its major flaws—well, factually, let me do this. Factually, Steele involved a situation where the police in Houston were after some bad guys, and they intentionally set a house on fire for the purpose of burning the house down. Now, they also wanted to get the bad guys out, but they didn't apply the same kind of things that the McKinney police officers did with a measured methodical action trying to smoke the guy out from the back to the front. Here they just wanted to burn the whole house down. The Houston Fire Department showed up. The police officers held them at bay and said, No, no, you may not touch this. We're burning it to the ground on purpose. Those are more extreme facts, I say. And on the factual side of things, what I'd like to mention is that I think Steele is more extreme, and it was a summary judgment decision that was reversed by the Texas Supreme Court, so I think the procedure got some differences. But it was so extreme, it reminds me of what this court has— when it dealt with civil rights, municipal liability in another context, in the old Border v. City of—sorry, Grandstaff v. City of Border case, where the police went overboard in that case. And not long after Grandstaff was decided, this court issued its Coon v. Ledbetter decision and said that, No, Grandstaff really can't be cited for anything other than similarly egregious kinds of actions. And I think that's the same with Steele. Steele really can't be cited for anything other than similarly egregious actions, which we don't have here. Another problem with Steele is that it relied on Armstrong. And the Armstrong Supreme Court case was not a police action case. It was just a regular—I say regular—it was an eminent domain case where the federal government confiscated some boat hulls that were under construction. And so the claim was that the government needed to pay that because there were some liens by the subcontractors. And to me, that is an eminent domain case, and that was the basis for it. Now, it said a general statement about the government needs to pay for what it takes, but there in Armstrong the government did take something. Here there was no taking in the sense of eminent domain for public use. There was damage that was necessarily caused by the police action, but that was for the public benefit. And that gets back to where my argument is between, I think, a significant difference between looking at the public use words and looking at the public benefit. But you're not saying we should interpret the Fifth Amendment similar to the dissimilar Texas takings clause, imposing an overbroad or shock-the-conscience exception. That's right. I don't think it's worth—this Court's rule is that if the federal claims are dismissed, you leave the issue of state law to the state courts. And even though I would like very much for you to overrule this case, I don't think you will. Well, I think it's more logical that it should be, at least in that regard, pursued in state court like it should have been. This case was filed in federal court immediately. I see that I'm out of time. You've saved time for rebuttal, Mr. Voss. Thank you. Mr. Redfern. Good morning, Your Honors, and may it please the Court. I'm Jeffrey Redfern here on behalf of the Appellee Vicki Baker. The city of McKinney is requesting a blanket categorical exclusion from the Fifth Amendment. The Supreme Court held— They're saying that there's no use here. Where's the use? The use? The use is getting a dangerous felon off the street, Your Honor, and I don't think it's possible to come up with a clearer example of a public use than criminal law enforcement. It's quintessential public good. I heard some language— Before you go to that, just on the question, wouldn't it that this bad guy, the armed fugitive, isn't he the taker? He went into the house. He took it. And therefore, the police response in one sense is, in fact, actually the phone call to the police came from the owner. Go in and get him out. So, Your Honor, I take your question to be referencing the particular intended beneficiary test of YMCA. I think it's important to keep in mind that the city never argued that below, and they're not arguing it here, although I just a moment ago heard a few comments to that regard. So I think that's pretty clearly waived. In any event, I don't think there's any dispute on this record that my client is not the particular intended beneficiary. The record shows that this guy was wanted from several law enforcement agencies. He'd been involved in a high-speed chase. He had apparently kidnapped a 15-year-old girl. And when my client called the police— Yeah, but then your client's daughter lets him in. Terrifying moment. She lets him in. Then your client calls the police. It looks to me that the issue is, is that public use or is that just getting the person who took the house, the real taker, not the government, out of the house? Your Honor, she was calling the police to help them. He was their number one target. They were all looking for him. She was not calling because he showed up at her house and she wanted him out. She wanted to help them get their man. But in any event, none of this has been argued in this case. If it had been, I think those would be exactly the kind of case-specific factual circumstances that the Supreme Court was talking about in Arkansas Game and Fish. It said that that's how we're supposed to resolve these Fifth Amendment cases, not by resorting to the kind of blanket exclusionary rules that my friend is asking this Court to adopt. And in this case, I don't think the Court has to go any farther than the Supreme Court did in Arkansas Game and Fish. There's one option on the table here for reversal. They're saying the police power is exempt. We know that's not true. We've known for at least 100 years the Supreme Court has held that. This Court has held that. We've known for 150 years that intentional damage is treated the same way as the acquisition of property under the Fifth Amendment. And they haven't offered any sort of case-specific arguments for why. Help me if you just quickly give the case title when you say 100, 150. You're talking about Pompeli. Yes. Pompeli. Yes. That's the flooding case. That's the flooding case, Your Honor. And that was damage caused intentionally by physical invasion. And I've never seen the Supreme Court say it's compensable. Yes. Just to test you on that, though, the Supreme Court's never been faced with a flooding case where people would die unless they flooded. I'm not aware they have. And that's a little closer, right? Well, I don't think so, Your Honor, because the Fifth Amendment isn't concerned with whether the government has a really good reason for what it's doing. The Supreme Court said in Lingle that a takings claim presumes that the government is acting for a really good reason. But the real question is whether these burdens should be borne by one random unlucky individual or society. But I guess you heard me asking about history and tradition, so I'm grateful you're going back a century or two so we sort of can maybe guess at what the framers meant by the Fifth Amendment. And aren't I right that, and I'm sure you're very prepared, that the line of authority from the Supreme Court and even predating the Supreme Court, English common law, relating to the governments of power to stop fires, that's the hardest line for you. So I'm glad you asked that question. Bowditch. I'm thinking Bowditch. So Bowditch was not a constitutional case. It was a statutory case. And I think that if we actually look at the fire cases, there is some dicta in later cases where there's essentially a myth about what these fire cases hold. If we go back, though, to the actual cases like Bishop and Parsons v. Macon, Georgia, 1849, the court there says when you have to tear down houses to create a fire break, the person who's doing it, because there's necessity, there's exigency, the person who did that isn't a trespasser. You can't hold them personally liable. But the government itself is liable within the constitutional principle. Also, City of New York v. Lord and Mitchell v. Harmony, that wasn't a fire case, but it articulated the same principle. So the labor can create the fire break, no liability, but the government can't? But in Bowditch, it was the government. In Bowditch, it was the government, and there were only statutory claims at issue in that case, Your Honor. You made an argument for a case-by-case based on the facts earlier. That's what I heard you say, and that generally makes sense. But suppose that we wanted to speak more broadly to this so that those in the future will know what to expect and what liability. I put on my old city attorney hat and say, you know, if I had city officials asking me what's going to be a taking and what isn't, and I say, well, the Fifth Circuit back in 2023 announced the following test that we should use. So what's the test? It's not fact-specific as to your case, because I know you want to win under your facts, and that's legitimate. But speaking more broadly, what is the test that we should announce short of a broad police power? So, Your Honor, I think the elements of a takings claim here for destruction are did authorized government action intentionally or foreseeably cause the destruction of private property for a public purpose? And there can be particular facts that would indicate that there should be a narrow exception, such as particular intended beneficiary in YMCA. We would certainly concede that if the property owner is at fault or guilty, that they don't have a claim in a situation like that. And then I think the Fourth Circuit's decision in Yon v. Dorchester illustrates how to apply some of these foreseeability intentionality principles. And that might not be an exclusive list, but I think if we look at the Supreme Court's decision in Arkansas against Fish as a model, they listed a few of the factors that have been relevant in previous cases. It didn't say that's necessary in all of it. Questions of state law can come into it. So re-articulate the test that you just in response to Judge Smith. Sure. The basic test, Your Honor, is if authorized government action intentionally or foreseeably causes the destruction of private property. And I think that's the test that the Court articulated. Spikes put down as someone steals my car, carjacks it, they're going down the road. Police throw out spikes. The government's now liable to me for the damage? I think there might be a question in that case about intentionality or foreseeability. If they thought that they were timing it just right and weren't going to get other people. If they knew that they were going to get 50 cars that went by before they got there. No, just the car because if it's here in your brief and at trial, you've agreed that the police were commendable and it was necessary for them to do what they did. That's right. So intentionality was limited and measured. So if you're saying there's an exception for that, I don't think your client would prevail here. I'm not sure I follow the question. My point is instead of blowing up her house, the fugitive going in the house and then they've got to blow the house up to get them, the fugitive grabs her car and drives and the police want to stop and they throw down spikes and it damages Ms. Baker's car. So I think in that situation, arguably at least, she wasn't any worse off because he would have left with her car. And that's actually what I wanted to get to in some of these firebreak cases. The Bishop in Parsons v. Macon, also Steele v. City of Houston, says that in these cases, to the extent that compensation has been denied, it's because the property would have been destroyed anyway. If a conflagration is raging through a city and you create a firebreak, it's very likely that your house would have been burned down if it hadn't. Let's go back to the test that you've enunciated and go back to the simple example I alluded to before, which is that there's a legitimate justifiable police chase and police and other emergency vehicles cut across someone's lawn and tear up the lawn. Now, that fits the test that you enunciated because it was obviously predictable if they cut across the lawn, they're going to tear down some bushes and trees and mess up the grass and maybe knock down a fence. That's all predictable. So that would be compensable under your test. I think so, Your Honor. The city would certainly be free to argue that it was accidental or something. It would be the same if, say, a commercial aircraft or a commuter aircraft is hijacked and government feels it's necessary to take it down. They don't know what their intentions are. They're headed toward a high-population area. They shoot down a commercial aircraft which levels or destroys several blocks of a suburban neighborhood. There's a takings claim there? Well, if we're talking about damage to the neighborhood, I think so. If we're talking about the plane itself, I don't think there's necessarily – I mean the damage to the neighborhood. Yes, I think so, Your Honor. And, of course, if the government wants to argue that there's some particular factual circumstances that make that different, they're welcome to. I might be up here representing the property owner in that case, but I won't overstate what the court decides in this case. If I could return briefly, though, to the history of the Fifth Amendment, Horn cites St. George Tucker, 1803. This is the earliest contemporary commentary we have on the meaning of the Fifth Amendment. And he says that the entire point of the Fifth Amendment was that during the Revolutionary War, continental soldiers were seizing supplies from the colonists without compensating them. And if there was ever an exigent circumstance, an emergency, that would justify this kind of seizures, surely it was a war for independence on our own soil. And they specifically wanted to make sure that even those burdens were getting properly shared across society as a whole. We can even look to other founding-era declarations of rights, like the Northwest Ordinance. Its takings clause talks about public exigencies requiring property be seized for the common preservation. Why am I thinking that there's a Civil War wartime case where a bridge is destroyed and explicitly the court said not compensable? Well, the interesting — so that was dicta, Your Honor, because the actual issue — But what case was that? Because you just said wartime damage is compensable, but what case is that? That was, I believe, United States v. Southern Pacific Railroad, I believe. Okay. And the issue in that case — I think it's just wrong. Well, so the dicta in that case I think is incorrect, Your Honor, but what was happening in that case was that the bridges had initially been destroyed and then the Army rebuilt them, and then they wanted to charge the owner for rebuilding them. And the court said, no, you don't get to charge them for rebuilding them. You did this for the war, and they get to keep them now. And then in dicta the court said, in fact, it's not compensable. And I think in a situation like that where if we're talking about war and the front line is moving back and forth, we can assume that things would be destroyed by the enemy if they weren't destroyed by you. I think that's what was going on in the Caltex case where Japanese troops were entering Manila hours before United States troops blew up some refineries. If they hadn't done that, the Japanese would have had them, and they likely would have blown it up when they retreated. But war is different. Fire is different. Here it's an armed fugitive with a young girl hostage. He's on meth. He's communicating he's going to die by suicide. It's sounding pretty like wartime to me. Well, Your Honor, to the extent that there's a special rule for wartime, I think we can maybe draw some of that from the language in Caltex. I don't think it applies to law enforcement activity. There's certainly never been anything in Supreme Court law saying that. And in YMCA, that case drew four separate opinions. Not one of them suggested that because these were exigent law enforcement circumstances, this destruction was justified. You point to any case ever where the United States has paid for property damage when law enforcement is responding to an exigent emergency situation? I'm not aware of one, Your Honor, but I'm also not aware of cases going the other way. I think the norm is that there is compensation in these cases. I know that in Iraq and Afghanistan, our troops routinely pay people whose property is destroyed by war if they were innocent and not involved in the conflict. Of course, before Nick, none of these cases could have been in federal court. So if we look to state courts, even there we don't have a lot. We basically have a two-two split with cases like this. We've got Texas and Minnesota on the right side, and then we have California and South Dakota on the other. In Texas, though, the Steele decision did come out the way you did. The court then qualifies it and says, well, maybe in times of great public emergency, noncompensable. And I'm not sure exactly what it meant by that. I think that clearly it was the same situation as here, so it has to be some higher bar than that. I don't think that's consistent with the history of the Fifth Amendment, certainly. And Texas's Constitution, at least, I think it's consistent with the Fifth Amendment in requiring compensation for intentional damage this way. At bottom, though, I think that my friend's argument basically boils down to the government shouldn't have to pay compensation when it's doing things for a really, really good reason. And that's a theme that is just absent from 200 years of Supreme Court precedent. The Takings Clause is not at all about fault. It's not about whether the government is acting for a good reason. It's just about how we as a society decide that we're going to allocate benefits and burdens. So his argument really repeatedly was follow every single other circuit. And he says there are five. I'd focused on three. So at least three, but maybe you would say all five have been assertive. I would say I'll give him the Third Circuit as well. Okay. But yet you would then have to say, and you do, all four of those circuits. All four of those circuits are wrong. They don't cite or discuss the governing Supreme Court precedent, 100 years of case law saying the police power is not exempt. And I think this court in John Corp and the Fourth Circuit are already on the other side of that split. So I don't think there's any way to resolve this case that avoids that split ongoing. But just to wrap up on the Fifth Amendment, I think really if ever there were a case that implicated Armstrong's concerns that the Takings Clause is designed to prevent the government from forcing some people to bear public burdens that should be borne by society as a whole, this is it. Law enforcement is a public good. We pay for law enforcement. We pay for police salaries. We pay for equipment, their real property. And there's no reason to single out this one cost of law enforcement and say, you know, this one alone we're just going to have a perverse lottery where a random individual every few years gets hit with a massive bill that they can't even buy insurance for. I mean, to me that makes as much sense as saying that we're going to have a lottery to decide who pays the police chief's salary this year. Now, I'd like to turn briefly to Monell here. I think that the evidence here is clearly sufficient to support the jury's verdict. But I would ask this court to hold that Monell actually doesn't apply to Takings claims. I think that's at least strongly implied by the Supreme Court's decision in Nick where it said that a property owner who suffers an uncompensated taking can proceed directly to court under Section 1983. And that, I think, reflects the nature of the Fifth Amendment in that unlike other constitutional rights, it doesn't prohibit the government from doing something. It places an affirmative and ongoing obligation to provide compensation once a taking has occurred. So there's no dispute. My client still hasn't been compensated. I think that is necessarily attributable to the city. They're here litigating this case, arguing that they shouldn't have to compensate her. And I think adopting that rule would simply make it easier for litigants to avoid going through this sort of pointless exercise in the future of putting up a city employee and saying, yes, we didn't pay him because we don't pay these. That's why we're litigating this case. Moreover, I think it avoids potential for juror confusion. I think the jury in this case thought the question they were being asked to answer was so obvious that it felt like a trick question to them. The policy of not paying these claims is, in fact, the reason that she didn't get paid. It almost seemed confusing to them. Question. Say we disagree with you on whether there's been a compensable Fifth Amendment taking. Again, just thinking out loud. So say we send it back to the district court. You've got your Texas takings claim. The Texas takings clause, both the terms of it and Texas Supreme Court interpretation of it, are broader than what we see on the federal side. I believe you've already told us in your red brief that you would sort of reelect your choice of remedy from which another appeal would follow. Is that kind of how you would see things playing out? I think that's the sequence, Your Honor. I do just want to briefly flag that you alluded to the difference in language in the Texas Constitution. There's a great article by Professor Molly Brady in the UVA Law Review a few years ago about the damagings clauses, and it explains that there are all these states in the late 19th century that adopted takings clauses that said taken or damaged. She explains that this was not meant to cover damage caused by physical intrusions because that was already understood to be compensable under the Fifth Amendment. This was intended to go beyond that and essentially constitutionalize the law of nuisance because there were all of these railroads at the time and they were seriously interfering with people's use and enjoyment of property. But under Fifth Amendment doctrine, if the railroad didn't actually cross your property, you wouldn't have had a claim. And they wanted to give people a way of getting sort of nuisance claims or loss of access claims. But it wasn't meant to cover physical damage because that was already encompassed by the Fifth Amendment, at least when it's an intentional physical intrusion. Are there any further questions, Your Honor? Thank you. Thank you. Ross for Grubodel. Yes, Your Honor. There are a couple of things that I wanted to address. One of them was the fairness argument. The fairness argument is the rationale you should employ here, and in the other cases that have decided the specific issue of whether the Fifth Amendment takings clause applies to law enforcement activities and damages caused by those activities, the fairness was addressed and dismissed as a concern. So I would urge the Court to follow those precedents. The argument was confirmed from the other side that we need to look at this from a higher level of an imminent domain approach and redefine the test as authorized government and intentional actions that destroy property for a public purpose. Well, that goes right back to what I think is a real problem in this case because that's what the district court did, and I think that that's not warranted, not just by these facts but also by the other cases that have specifically addressed the law enforcement situation. Every single one of them, and Judge Higginson asked, do you have a case that addresses this and rules the other way, and the answer is no because I'm sure that I would be kind of pounded over the head with it if it was out there. Well, at the end he did say there's already a split, the Fourth Circuit, and I'm just not remembering the Fourth Circuit case. I'm not either. But there are so many cases from all the other circuits that start with, as I said before, the Supreme Court's view that this is not covered by the Fifth Amendment. Law enforcement damages are not covered by the Fifth Amendment. Public purpose doesn't equal public use, and if we redefine the test to say public purpose, well, that's just playing with the Fifth Amendment language itself because it talks about public use, and so that's where I think the court needs to be careful. No other case has applied that test in the context of law enforcement. A mention was made of the Arkansas case. Again, that's an imminent domain flooding case. The firebreak cases are also a different beast and don't compare to these cases. I think that the issue is whether or not this is a Fifth Amendment violation. Real briefly, if it's not a Fifth Amendment violation, then we already don't have one of the elements necessary to establish the Section 1983 claim. I don't agree that by establishing or by alleging a Fifth Amendment violation that you automatically get into court on a Monell claim under Section 1983 automatically. The closest I can find a case that addressed that particular issue, whether or not a Fifth Amendment takings claim in a law enforcement damages case is sufficient to establish liability under 1983 is a district court case out of the Western District of Texas, the Chavarin case, C-H-A-V-A-R-I-N. It's on page 35 of the city's brief. There, there was damage caused by the law enforcement to a home during police activity. The district court there dismissed the case because of the failure to plead the elements of Section 1983. My point in this appeal is also that there was a failure to not only plead but also prove. Since I'm running out of time, I'll reference the joint pretrial order, page 677 in the record, where the plaintiff's allegations in paragraph 2 fail to mention anything about the elements under Section 1983. And I'll leave it to the brief, pages 34 through 37, on the 1983 issues. I'm out of time. Thank you for listening. Thank you, Mr. Goss. Your case is under submission.